# Birmingham Railway, Light & Power Co. *v.* Fuqua.

## *Injury in Crossing Accident.*

(Decided November 21, 1911. 56 South. 578.)

1. *Municipal Corporations; Ordinances; Validity; Presumption.*— Where a book of city ordinances was introduced in evidence to prove an ordinance regulating the speed of street cars, the ordinance was presumptively valid, and any irregularity therein was matter for defense.

2. *Street Railways; Crossing Accident; Complaint.*—Where the complaint set out in haec verba a city speed ordinance alleged to have been violated in the operation of a car which struck and killed the intestate, and concluded with the averment that the ordinance was in full force and effect at the time of the accident, it sufficiently alleged that the ordinance was valid and in force at that time.

3. *Same; Violation of Speed Ordinance.*—Where there was evidence that the death of intestate from a collision with a street car was proximately caused by a violation of the city speed ordinance, a prima facie case of actionable negligence was raised.

4. *Same; Ordinance; Application.*—Where a city ordinance limiting the speed of cars was not limited to any particular hours of the day, it applied to cars running at any hour.

5. *Same; Wanton Injury.*—Where there was evidence that the motorman of the car discovered the deceased prone on the track in time to have prevented the car from striking him, but consciously omitted to take steps to do so until it was too late, it was not error to submit to the jury a count charging a wanton injury.

[Birmingham Railway, Light & Power Co. v. Fuqua.]

6. *Same; Instructions.*—A charge asserting that if plaintiff's in-testate was lying down on defendant's railway track just before he was struck, then the motorman was not bound to keep a lookout to see whether he was lying on the track, etc., was properly refused, as it is the motorman's duty to keep a lookout for one prone, as well as one erect on the track.

7. *Same; Presumptions; Instructions.*—A charge asserting that a street railway motorman in charge of a street railway car, could presume that no one would be lying down on defendant's track, until it appeared to the contrary, if the jury believe that the decedent was lying down at the time he was struck and killed, was properly refused, since the law indulges no such right of presumption.

8. *Evidence; Conclusion.*—A statement by a witness "you could see where he dragged along" was a mere shorthand rendering of the facts, and not a conclusion.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by E. A. Fuqua, as administrator, against the Birmingham Railway, Light & Power Company, for the death of his intestate, by being run over or upon by a street car on a public street. Judgment for plaintiff, and defendant appeals. Affirmed.

Count 8 was as follows: "Plaintiff claims of the defendant $30,000 as damages, for that heretofore, to-wit, on the 10th day of January, 1909, there was in force and effect in the city of Elyton, Jefferson county, Alabama, an ordinance substantially as follows: (Here follows section 8 of an ordinance, set out in hæc verba, preventing cars from being propelled through the streets of said city at a greater rate than eight miles per hour, and at certain points at a greater rate than two miles per hour.) That on said day defendant was operating a street car propelled by electricity upon a public highway in said city of Elyton, and while plaintiff's intestate, Dallas Campbell, was upon said public highway in said city, said car ran upon or against said plaintiff's intestate and killed him. Plaintiff says that his said intestate's death was proximately caused by a violation of said ordinance by defendant's servant or

agent in charge of said car; that is, said servant or agent wrongfully, and in violation of said ordinance, caused or allowed said car, while running through the corporate limits of said Elyton, to run at a greater rate of speed than eight miles per hour."

The demurrers were that it does not show that said ordinance was a valid ordinance, and does not show sufficiently how said ordinance was violated.

The following charges were refused to the defendant: (3) "If you believe from the evidence that plaintiff's intestate was lying down upon defendant's track just before being struck by the war, then I charge you that the motorman did not have to keep a lookout to see whether he would be lying down there." (5) "If you believe from the evidence that plaintiff's intestate was lying down on defendant's track just before being struck by defendant's car, then I charge you that the motorman did not owe plaintiff's intestate any duty to look out to see whether he was lying down on said car track." (6) "I charge you that there would be no violation of the ordinance to run the car more than eight miles per hour at 5 o'clock in the morning, if you believe from the evidence that there was no likelihood of any person or vehicles or stock being on that part of the street, or near that part of the street, at such time." (8) "I charge you, gentlemen of the jury, that the defendant's motorman had the right to presume, until it appeared to the contrary, that no one would be lying down on defendant's track, if you believe from the evidence that Dallas Campbell was lying there."

TILLMAN, BRADLEY & MORROW, and L. C. LEADBEATER, for appellant. The court erred in refusing charge 3.— *B. R. L. & P. Co. v. Jones,* 45 South. 177. The court erred in refusing charge 8.—Authorities supra; also in

refusing charge 6.—*So. I. R. R. Co. v. Bedford,* 75 N. E. 268. The court erred in submitting the wanton counts to the jury as nothing more than subsequent negligence was shown. The court erred in overruling demur-; rers to the 8th count, and in refusing the affirmative charge as to the same.—28 Cyc. 351. The court erred in permitting the witness to say, "you could see where he dragged along."

BOWMAN, HARSH & BEDDOW, for appellee. It matters not whether a man is prone or erect upon the track, the duty to keep a lookout is the same.—*B. R. L. & P. Co. v. Brantley,* 141 Ala. 614. The ordinance was valid, and within the police power.—McQuillan Municip. Ordinances, 473-4. The evidence was sufficient to carry the wanton count to the jury.—*C. of G. v. Partridge,* 136 Ala. 537; *So. Ry. v. Shelton,* 136 Ala. 191; *Bush v. Southern,* 122 Ala. 470. The evidence was a shorthand rendering of the facts and not a conclusion.—*A. M. R. R. Co. v. Jones,* 114 Ala. 519; *Mobile R. R. Co. v. Walsh,* 146 Ala. 295.

. DOWDELL, C. J.—The eighth count of the complaint to which a demurrer was interposed was unobjectionable on the ground assigned. This count set out the ordinance of the city, alleged to have been violated, in hæc verba, and concluded with the averment that the ordinance "was in force and effect" at the time of the alleged injury. This in pleading, where the negligence complained of consisted in the failure to comply with a city ordinance, was sufficient and tantamount to averring that the ordinance was a valid one. In 29 Cyc. p. 568, the principle is stated as follows: "Where an injury occurs through the neglect of a party to comply with a city ordinance, such ordinance must be

pleaded, although the violation thereof is not claimed as negligent per se, and it must be further alleged that the defendant had the means and opportunity to perform the duty in time to avert the injury. It need not be set out in hæc verba; but that part of the ordinance relied on, or all the substantial parts thereof, should be set out. Moreover, it should be directly averred that the ordinance was in *force* (italics ours) at the time the injury occurred." We quote the above from the text only to show that the averment that the ordinance was in *force* at the time the injury occurred was a sufficient averment of its validity.

On the trial the plaintiff introduced in evidence the book containing the ordinances of the city of Elyton, including the ordinance in question. This evidence was without dispute or objection, and without more, upon the introduction of the book of ordinances of the city, the presumption of the validity of the ordinance attaches. If the ordinance was invalid by reason of any irregularity in its passage, this was matter of defense to be set up by the defendant.

There was evidence tending to show a violation of the ordinance set out in the eighth count and consequent injury, and therefore the general charge requested for the defendant under this count was properly refused.

The plaintiff's intestate was run upon and killed by the defendant's car in a public street, and at or near the crossing of two public streets, in the town of Elyton. The accident occurred about 5 o'clock in the morning on the 10th of January, 1909. The track of defendant's street car line was on a grade with the street. The seventh count of the complaint charged wanton injury. There was evidence tending to show, and it was of consequence open for the jury to so find, that the deceased was lying down on the track, that the track was straight

for some considerable distance, that the car carried an arc headlight which would enable the motorman to see an obstruction 200 or 300 feet ahead, on the track, if he was keeping a lookout, which it was his duty to do.

The evidence as to the speed of the car varied from 8 to 20 miles an hour, and further tended to show that at 8 miles an hour it could have been stopped in 10 to 20 feet, and that there was no effort to check its speed until it had run upon the deceased; that it was in the "heart" of the town and at a place in the street traveled in the early morning by working people going to their work; that the motorman was at the time and to some extent under the influence of liquor; and that the motorman was familiar with the place and its surroundings.

Apart from any consideration of the question of recklessness in the high rate of speed at the time and place, and of a violation of a city ordinance in the running of the car at a greater rate of speed than that fixed in the ordinance, under the tendencies of the evidence it was open for the jury to find that the motorman saw the deceased in time to have averted the injury, but consciously omitted to make any effort to do so until it was too late, and this with a conscious knowledge of the probable consequences of his failure to act. And this being so would constitute wantonness. The court committed no error in refusing to the defendant the general charge requested in its favor under the seventh count.—*Southern Ry. Co. v. Shelton*, 136 Ala. 191, 34 South. 194.

The ordinance of the city of Elyton, which fixed the rate of speed of street cars running in the streets of the city, was not limited to any particular hours of the day, and therefore applied to the running of cars at 5 a. m. as well as at any other hour of the day.

In respect to the duty of keeping a lookout for obstructions or persons on a railroad track, the law recognizes no distinction between keeping a lookout for one prone, and one erect, on the track. The duty of keeping a lookout is the same in either case. There was no error in refusing charges 3, 5, and 6, requested by the defendant.

Charge 8, refused to the defendant, was inherently infirm in the statement of the law. The law indulges no such right of presumption as that invoked by the charge. The duty imposed of keeping a lookout is in refutation of such a right of presumption.

There was no error in overruling the motion to exclude the testimony of the witness J. S. Sutter, "Well, you could see where he dragged along kinder." In view of what had just preceded in this witness's testimony, this was but the statement of a collective fact—a shorthand rendering.

We fail to see that the trial court committed any reversible error, and the judgment will be affirmed.

Affirmed. All the Justices concur.


